UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE A.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:20-cv-700
Litkovitz, M.J.

ORDER

Plaintiff Michelle A. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply memorandum (Doc. 20).

**I. Procedural Background**

Plaintiff protectively filed her applications for DIB and SSI on September 13, 2017, alleging disability since February 28, 2015, due to back problems, right shoulder issues, bi-polar disorder, depression, anxiety, asthma, scar tissue on her lungs, and high blood pressure. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Anne Shaughnessy.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on August 14, 2019. On August 26, 2019, the ALJ issued a decision denying plaintiff's DIB and SSI applications. This decision became the final decision of the Commissioner when the Appeals Council denied review on July 14, 2020.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since February 28, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: lumbar spondylosis, diabetes mellitus, obesity, asthma, status post meniscus repair of the left knee, anxiety disorder, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to fumes, odors, dusts, and gases. Additionally, the [plaintiff] can have occasional interaction with coworkers and supervisors and would need to work in an environment that is not fast paced and has static duties.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1967 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11 The [plaintiff] has not been under a disability, as defined in the Social Security Act, from February 28, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-35).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[3] Plaintiff's past relevant work was a packaging supervisor, a light, skilled job, and a plastic molding operator, a light, unskilled position. (Tr. 34, 58-59).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as Merchandise marker (304,000 jobs in the national economy), shelving clerk (16,000 jobs in the national economy), and cleaner/housekeeper (137,000 jobs in the national economy). (Tr. 35, 59).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ erred by (1) failing to properly evaluate the results of plaintiff's functional capacity evaluation ("FCE"), and (2) finding the state agency psychological consultants' opinions "persuasive" even though the "consultant[s] never had the opportunity to review over 500 pages of medical evidence added to the record after the case was reviewed. . . ." (Doc. 16). In response, the Commissioner argues that the ALJ properly evaluated the opinion evidence of record, and the ALJ's decision is supported by substantial evidence. (Doc. 19).

**1. The ALJ's evaluation of the opinion evidence of record.**

In her first assignment of error, plaintiff alleges the ALJ erred in evaluating the opinions contained in the FCE completed by physical therapist Emily Drees. (Doc. 16 at PAGEID 1193).

5

Plaintiff alleges the ALJ erred "in refusing to consider the results of [plaintiff's] functional capacity evaluation where the evaluation was endorsed by [plaintiff's] treating physician, where terms used to describe functional limitations were defined within that report[,] and where the findings of the evaluation were based on test results as well as the examiner's observations." (*Id.*). The Commissioner argues that the ALJ's evaluation of Ms. Drees's opinions contained in the FCE is supported by substantial evidence. (Doc. 19 at PAGEID 1225-28).

### a. Relevant medical record

Plaintiff was referred to physical therapist Ms. Drees for an FCE by her primary care practitioner, Advanced Practice Registered Nurse ("APRN") Tracy Dunn. (Tr. 1046). The FCE was performed on April 2, 2019. (Tr. 1104). Ms. Drees reported that plaintiff arrived at the clinic with slow gait speed, and she had decreased lumbar rotation during the swing phase of ambulation. (*Id.*). Plaintiff was consistently shifting weight in the chair during paperwork and during the subjective portion of the evaluation and twice requested to stand for two to four minutes because of secondary pain with prolonged sitting. (*Id.*). Plaintiff's overall consistency of performance on the functional capacity tasks was rated as "High." (Tr. 1109). Following the evaluation, Ms. Drees opined that plaintiff had low ambulation agility, very low finger dexterity, and medium manual dexterity; she could seldom bend over/stoop, climb steps during work, or stand/walk; and she could never climb ladders, crawl, or kneel/squat. (Tr. 1112). Ms. Drees further opined that plaintiff was unable to perform her factory machinist/line worker job because plaintiff frequently needed to change positions every 20-30 minutes, and plaintiff could only safely lower 10 pounds to the ground. (*Id.*). Ms. Drees opined that plaintiff's "low back pain limit[ed] her ability to perform required work tasks safely and effectively." (*Id.*). The record

6

shows that APRN Dunn reviewed the FCE and provided her "[s]ignature of agreement" on August 15, 2019. (*Id*.).

The ALJ found Ms. Drees's opinions "not persuasive for a number of reasons." (Tr. 32). The ALJ explained:

> First, Ms. Drees is a physical therapist and not an accepted medical source for the present disability analysis. Second, Ms. Drees's findings are vague and not presented in specific vocational terms. It is unclear what specific limitations Ms. Drees identifies when she describes the claimant as only able to engage in "seldom" standing or that she has low ambulatory agility. Third, Ms. Drees does not present sufficient justification for her findings. It appears as though she relies heavily on the claimant's subjective reports of pain and of functioning and does not rely on the claimant's medical history or actual functioning in reaching her conclusion. Finally, Ms. Drees's determination regarding disability is not persuasive as such decisions are exclusively left to the Commissioner. Considering these factors, Ms. Drees's opinion is not consistent with the record as a whole.

(*Id*.).

### b. Evaluating medical opinions

New regulations for evaluating medical opinion evidence apply in this matter because plaintiff filed her applications for DIB and SSI after March 27, 2017. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[5] *Id.* Under the new regulations, the Commissioner will "not defer or give any specific evidentiary weight,

---

[5] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

7

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[6], including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[7] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical

---

[6] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[7] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

8

opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

### c. The ALJ erred in evaluating the opinion from Ms. Drees.

Plaintiff principally argues that the ALJ erred in evaluating the FCE opinion from Ms. Drees because the ALJ improperly determined that Ms. Drees was not an acceptable medical source. (Doc. 16 at PAGEID 1193-94). Citing to the Sixth Circuit's decision in *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546 (6th Cir. 2020), plaintiff argues that Ms. Drees's evaluation should have been found to be more persuasive because APRN Dunn, plaintiff's primary care practitioner, reviewed the FCE and provided her "signature of agreement." (Doc. 16 at PAGEID 1193-94).

In *Hargett*, the Court of Appeals determined that the presence of the signature of the plaintiff's primary care physician on the FCE form, which was completed by a physical therapist, was sufficient to elevate the FCE to a treating-source opinion. *Hargett*, 964 F.3d at 546. The Sixth Circuit explained that the ALJ should have considered the FCE as a treating source opinion because the plaintiff's primary care physician referred plaintiff for the FCE and thereafter signed off on the results. *Id*. at 554.

Just as the plaintiff's primary care physician in *Hargett* referred the plaintiff for an FCE, here, plaintiff's primary care practitioner APRN Dunn also referred plaintiff for the completion of an FCE. APRN Dunn is an "acceptable medical source" pursuant to 20 C.F.R. § 404.1502(a)(7) because she is a "Licensed Advanced Practice Registered Nurse." 20 C.F.R. § 404.1502(a)(7). Moreover, just as the plaintiff's primary care physician signed off on the

9

results of the FCE in *Hargett*, here, APRN Dunn likewise reviewed and signified her agreement with the results of plaintiff's FCE through her signature. (Tr. 1112). The Court is therefore persuaded by plaintiff's argument to extend the holding of *Hargett* to the facts of this case. Accordingly, the ALJ was required to consider the opinions contained in the FCE as the opinions of APRN Dunn and consider "how persuasive" that medical opinion is. 20 C.F.R. § 404.1520c(b). The ALJ, however, did not do this. Therefore, although the ALJ was correct that Ms. Drees, as a physical therapist, was "not an acceptable medical source" (Tr. 32), the ALJ erred by failing to consider the results of the FCE as the opinion of APRN Dunn, who was an acceptable medical source.

Additionally, the ALJ erred by discounting the opinions contained in the FCE on the basis that the "findings are vague and not presented in specific vocational terms." (Tr. 32). The ALJ specifically stated it "is unclear what specific limitations Ms. Drees identifies when she describes the claimant as only able to engage in 'seldom' standing or that she has low ambulatory agility." (*Id.*). Ms. Drees opined, in relevant part, that plaintiff had low "ambulation agility" and could "seldom" bend over/stoop, climb steps during work, high reach with the non-dominant arm, and stand/walk. Under these opined limitations, the FCE directs the reader to the "Operational Definitions for ratings." (Tr. 1112). The "Operational Definitions" section, in turn, defines various terms and phrases used throughout the evaluation. (Tr. 1110). Contrary to the ALJ's finding, the "Operational Definitions" section in the FCE specifically defines "seldom" and "ambulation agility." (*Id.*). Specifically, the FCE defines "seldom" as less than 0.5 hours of a work shift. (*Id.*). The FCE defines "ambulation agility" as the ability "to move about or change directions while walking, jogging, or running for a short period of time. Examples – Low: slow walk at 1.8 to < 3 mph, Medium: normal walk at 3 to 4.25 mph, High: fast walk or

10

jog at 4.25 to < 5.5 mph." (*Id.*). Accordingly, the ALJ erred in her finding that the opinions of Ms. Drees were not presented in specific vocational terms.

Moreover, the ALJ erred by rejecting the opinions set forth in the FCE by stating that Ms. Drees did not "present sufficient justification for her findings." (Tr. 32). The ALJ stated, in part, that it "appear[ed] as though she [Ms. Drees] reli[ed] heavily on the claimant's subjective reports of pain and functioning and [did] not rely on the claimant's medical history or actual functioning in reaching her conclusion." (*Id.*). Citing to the American Physical Therapy Association, the form defines an FCE as "a detailed examination and evaluation that objectively measures the evaluee's current level of function, primarily within the context of the demands of competitive employment, activities of daily living or leisure activities." (Tr. 1104). While plaintiff provided information such as "most recent employment," "prior work experience," and a "self-administrated comorbidity survey" (Tr. 1105), the opinions contained in the FCE are the result of numerous tests conducted by Ms. Drees on the date of the FCE. Specifically, the record shows that Ms. Drees performed the following tests as the basis for her opinions: far vision screen, active movement screen, two square agility test, usual walk speed, grip strength, keyboarding speed test, grooved pegboard test, workability rate of manipulation turning test, high lift, low lift, chest lift, short-carry strength tests, and chest lift frequent and low lift frequent tests. (Tr. 1106-09). Given the numerous tests conducted by Ms. Drees, the ALJ's conclusion that the opinions contained in the FCE are not based on plaintiff's actual functioning is without substantial support in the record.

For these reasons, the Court concludes the ALJ's evaluation of the FCE of Ms. Drees (and by extension, APRN Dunn) is not supported by substantial evidence. Accordingly,

11

plaintiff's first assignment of error is sustained, and this matter is reversed and remanded for a reevaluation of the opinions contained in the FCE in accordance with 20 C.F.R. § 404.1520c.

### 2. The ALJ's evaluation of the opinions of the state agency psychological consultants.

Plaintiff argues that the ALJ erred by finding that the opinions of the state agency medical consultants were "persuasive" because the consultants "never had the opportunity to review over 500 pages of medical evidence added to the record after the case was reviewed, which included key medical evidence such as [a] functional capacity evaluation, evidence of mental health treatment[,] and new diagnoses of diabetic neuropathy and bipolar disorder." (Doc. 16 at PAGEID 1196). The Commissioner argues that the ALJ's evaluation of the opinion evidence of record is supported by substantial evidence. (Doc. 19).

On November 20, 2017, state agency psychologist Dr. Paul Tangeman completed a mental residual functional capacity assessment and concluded that plaintiff was adequately capable of understanding, remembering, and carrying out instructions and was able to maintain attention and concentration at a fairly average pace. (Tr. 73). Dr. Tangeman opined that plaintiff was moderately limited in the ability to interact appropriately with the general public and respond appropriately to changes in the work setting; and plaintiff was not significantly limited in the ability to ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basis standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. 73-74). Dr. Tangeman opined that plaintiff's anxiety and depression would reduce her ability to withstand stress and pressure in the work environment. (Tr. 74). Dr. Tangeman further opined that plaintiff was capable of working

12

in an environment that was not fast-paced and one in which the duties were fairly static and changes in the routine could be easily explained. (*Id*.). State agency psychologist Dr. Janet Souder reviewed plaintiff's file upon reconsideration on January 18, 2018 and affirmed Dr. Tangeman's findings. (Tr. 105-07).

The ALJ found the opinions of the state agency psychologists "persuasive." (Tr. 32). Plaintiff argues that the ALJ erred in evaluating the opinions of the state agency psychologists because the ALJ failed to consider "over 500 pages of medical evidence added to the record after the case was reviewed. . . ." (Doc. 16 at PAGEID 1196).

As explained by the Sixth Circuit, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment, we generally require some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). Here, plaintiff correctly stated that the state agency reviewers did not have the opportunity to review the entire record. However, the ALJ reasonably determined that the additional records did "not undermine the findings of the DDS consultants." (Tr. 32). Specifically, the ALJ stated:

> While there are treatment records documenting counseling visits subsequent to the DDS consultants' determination, the inconsistent nature of the claimant's participation, the unreliable reports of symptoms, and her reports that her condition was improving do not undermine the findings of the DDS consultants.

(*Id*.). Despite the existence of additional records that were not available at the time that the consultants rendering their opinions, the ALJ's finding, and accompanying explanation, that the state agency psychological consultants' opinions was "persuasive" is supported by substantial evidence.

13

Plaintiff argues that the state agency reviewers did not have evidence that she "attempte[ed] suicide by overdose which resulted in the commencement of counselling in July 2018." (Doc. 16 at PAGEID 1198, citing Tr. 886, 892). Plaintiff also argues that the state agency consultants did not have evidence that she "admitted to new serious symptoms including homicidal ideation and audio hallucinations of hearing her name called." (*Id.*, citing Tr. 905, 920, 925, 950). The ALJ, however, thoroughly reviewed the evidence of record, including each treatment note referenced by plaintiff in her decision.

In particular, the ALJ stated that plaintiff "reported non-specific suicide attempts in June of 2018 that are not discussed elsewhere in the record and, apparently, did not require any medical treatment." (Tr. 31, citing Tr. 902). The ALJ also found that plaintiff's report of auditory hallucinations was not otherwise supported by the evidence of record. The ALJ explained:

> In October of 2018, the claimant reported nonspecific auditory hallucinations though there is no description of her appearing anything other than coherent and oriented during medical appointments (See, e.g., exhibit 13F/40). There is no indication elsewhere in the record that she experiences auditory hallucinations[,] and she denies having any hallucinations during her next counseling visit (Exhibit 13F/46).
>
> With those exceptions, the claimant's reports throughout therapy were generally consistent and unchanged in that she complained of a depressed mood, a lack of sleep, and feelings of worthlessness (See, e.g., exhibit 13F/51). Her counselor noted that the claimant had been inconsistent with her treatment and that the claimant had expressed an unwillingness to take steps to improve her condition (Exhibit 13F/54-56, 61). However, she reported to her primary care practitioner that her symptoms were improving with medication and that she is able to perform activities outside of the home without serious episodes of anxiety (Exhibit 14F/72).

(Tr. 31; *see also* Tr. 33: "Notably, there is no evidence anywhere in the record to support the claimant's singular report of her suffering from auditory hallucinations or that she had violent tendencies as she, again, expressed on a single occasion."). Plaintiff fails to allege how the ALJ

14

erred in evaluating the evidence of record, and how the ALJ erred in evaluating the opinions of the state agency psychological consultants.

Plaintiff also argues that the ALJ erred by finding the opinions of the state agency medical consultants persuasive, in part, because of the "new diagnos[i]s of diabetic neuropathy[.]" (Doc. 16 at PAGEID 1196). As best the Court can discern, plaintiff contends that this diagnosis, which plaintiff alleges was not available at the time of state agency review, undermines the conclusions of the state agency reviewers, and therefore the persuasiveness, of their opinions. (*Id*. at PAGEID 1196-1200).

The Commissioner argues that the ALJ discusses "evidence which shows that diabetic neuropathy, either alone or in combination with her other impairments, did not significantly affect Plaintiff's functioning." (Doc. 19 at PAGEID 1219-20, citing Tr. 26, 28-34). The Commissioner therefore contends that because plaintiff "did not meet her burden to show how diabetic neuropathy . . . affected her functioning during the time she alleges she was disabled," the ALJ committed no error. (*Id*. at PAGEID 1220; *see also Id*. at PAGEID 1230-31).

Within this assignment of error, and as best the Court can discern, it appears that plaintiff also argues that the ALJ fundamentally erred by failing to find that "diabetic neuropathy" was a "severe" impairment at step two of the sequential evaluation process. (Doc. 16 at PAGEID 1196-1200).[8]

---

[8] Plaintiff does not argue that the ALJ erred by failing to find that "bipolar disorder" was a "severe" impairment. Rather, plaintiff contends that the ALJ erred in evaluating the state agency psychological consultants' opinions because plaintiff was diagnosed with "bipolar disorder" after state agency review. (Doc. 16 at PAGEID 1196). The evidence shows, however, that the state agency psychological consultants found plaintiff's "Depressive, Bipolar and Related Disorders" to be a medically determinable impairment. (Tr. 68-69, 100). Notably, in the "Claimant-supplied Information" section, plaintiff reported that her "Bypolar (sic) depression is worse now than ever. I'm drowning and I just don't feel like trying to stay afloat anymore. . . . [I] [t]hink it would be easier for everyone if I was gone. . . ." (Tr. 94). Therefore, plaintiff's contention that plaintiff's bipolar disorder diagnosis was not available, and therefore not subject to review, to the state agency consultants is belied by the record.

15

Plaintiff argues that her diabetic neuropathy diagnosis, and related symptoms, is evidence that the ALJ's evaluation of opinions of the state agency medical consultants is not supported by substantial evidence. (Doc. 16 at PAGEID 1198-99). Plaintiff argues that she "did not have this condition at the time that agency physicians reviewed her file," and the diabetic neuropathy "has a substantial impact on her ability to perform light work." (*Id*. at PAGEID 1198). Citing select treatment notes, plaintiff argues that she was "initially diagnosed with neuropathy in November 2018 and she reported worsening foot pain both at that time and also in March 2019." (*Id*., citing Tr. 1057-58, 1068).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle"

16

in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n. 2.

The record shows that plaintiff's diabetic neuropathy was first mentioned by Dr. Lina Mitchell in a November 14, 2018 treatment note. (Tr. 1058). Dr. Mitchell assessed plaintiff with "Type 2 diabetes, uncontrolled, with neuropathy (HCC)." (*Id.*; *see also* Tr. 1064-65). Dr. Mitchell stated that plaintiff's current symptoms included worsening hyperglycemia and foot pain. (Tr. 1058). Dr. Mitchell stated that plaintiff had no episodes of hypoglycemia. (*Id.*). Plaintiff's physical examination was unremarkable, and Dr. Mitchell did not report any effects from plaintiff's diabetic neuropathy. (Tr. 1064). Dr. Mitchell asked plaintiff to bring her blood glucose record to the follow-up appointment. (Tr. 1064).

At the March 3, 2019 follow-up appointment, Dr. Mitchell noted that plaintiff did not bring her blood glucose record to the appointment. (Tr. 1068). Dr. Mitchell reported that plaintiff had not suffered from any episodes of hypoglycemia. (*Id.*). Plaintiff's physical examination was unremarkable. (Tr. 1074-75). Dr. Mitchell recommended plaintiff return in three months for a follow-up appointment and asked plaintiff to bring her blood glucose record to the appointment. (Tr. 1074-75). Plaintiff had a follow-up appointment with Dr. Mitchell on June 19, 2019. (Tr. 1079). Plaintiff did not bring her blood glucose record to this appointment. (*Id.*). Dr. Mitchell did not report any symptoms related to plaintiff's diabetic neuropathy. (Tr. 1079-88).

Plaintiff generally alleges that "[d]iabetic neuropathy causes numbness and pain which contributed to [plaintiff's] inability to perform the standing and walking required for light work and would have likely been considered by the agency physicians, had the condition developed prior to February 2018." (Doc. 16 at PAGEID 1198-99). There is, however, no evidence of

record that plaintiff's diabetic neuropathy limits plaintiff's ability to do work and this diagnosis, standing alone, is insufficient to establish that the impairment is severe. *See Higgs*, 880 F.2d at 863 ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). *See also Young v. Sec'y of H.H.S.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Moreover, there is no evidence that plaintiff has required further treatment for this condition nor is there any medical opinion that it impairs her functional abilities. Despite plaintiff's diagnosis of diabetic neuropathy, nowhere in Dr. Mitchell's treatment notes did she opine that plaintiff exhibited any limitations as a result of this diagnosis. Therefore, the ALJ committed no error in failing to categorize plaintiff's diabetic neuropathy as either a "severe" or "nonsevere" impairment. This decision is supported by substantial evidence.

Accordingly, the ALJ's evaluation of the opinions of the state agency consultants is supported by substantial evidence despite plaintiff's argument that the consultants "never had the opportunity to review over 500 pages of medical evidence added to the record after the case was reviewed. . . ." (Doc. 16 at PAGEID 1196). Therefore, plaintiff's second assignment of error is overruled.

**IT IS THEREFORE ORDERED THAT:**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 16) is **SUSTAINED IN PART AND OVERRULED IN PART** and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date: 3/28/2022

Karen L. Litkovitz
Chief United States Magistrate Judge